997 So.2d 729 (2008)
Arthur L. THOMAS
v.
Robert C. ANDERSON, D.D.S.
No. 2008 CA 0927.
Court of Appeal of Louisiana, First Circuit.
November 3, 2008.
*730 Sumpter B. Davis, III, Baton Rouge, Louisiana, for Plaintiff/Appellant Arthur L. Thomas.
Johnnie A. Jones, Sr., Baton Rouge, Louisiana, for Defendant/Appellee Robert C. Anderson, D.D.S.
Before: PARRO, McCLENDON, and WELCH, JJ.
McCLENDON, J.
In this medical malpractice case, the plaintiff appeals the judgment of the trial court dismissing his claim based on a finding that the plaintiff failed to prove that the extraction of two of his teeth by the defendant dentist caused his atypical facial pain. Finding no manifest error in the trial court's judgment, we affirm.

FACTS AND PROCEDURAL BACKGROUND
On March 2, 2001, the plaintiff, Arthur L. Thomas, consulted Dr. Robert C. Anderson, a licensed Louisiana dentist, complaining of a toothache. On that date, Mr. Thomas consented to and underwent the extraction of two teeth, numbers 3 and 4, located in the upper right side of his mouth. Following the extraction surgery, Mr. Thomas began to experience pain, different from that associated with the toothache, in the area of the extractions, which continues to exist to the present and *731 which has been diagnosed as atypical facial pain.
Subsequently, Mr. Thomas filed the present lawsuit,[1] asserting that he suffered permanent and severe nerve injury as a result of the extractions. Mr. Thomas further alleged that Dr. Anderson breached the appropriate standard of care in failing to take x-rays prior to the extractions, in failing to take any precautions to avoid nerve injury, and in failing to inform him of the risks of nerve damage and atypical facial pain. After a bench trial, the trial court concluded that Mr. Thomas failed to sufficiently prove that Dr. Anderson's treatment caused his injury or that Dr. Anderson breached the appropriate standard of care.
Mr. Thomas appealed, asserting that the trial court erred in failing to find that he proved that Dr. Anderson breached the standard of care, in holding that he did not carry his burden of proving that Dr. Anderson's treatment caused his injury, and in not applying the informed consent doctrine to this claim.

APPLICABLE LAW
The elements a plaintiff in a medical malpractice action is required to establish are statutorily defined as follows: (1) the degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians, dentists, optometrists, or chiropractic physicians licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; (2) that the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill; and (3) that as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred. See LSA-R.S. 9:2794(A). Summarizing, the plaintiff must establish the standard of care applicable to the doctor, a violation by the doctor of that standard of care, and a causal connection between the doctor's alleged negligence and the plaintiffs injuries resulting therefrom. Pfiffner v. Correa, 94-0924, 94-0963, and 94-0992, p. 8 (La.10/17/94), 643 So.2d 1228, 1233; Fagan v. LeBlanc, 04-2743, p. 6 (La.App. 1 Cir. 2/10/06), 928 So.2d 571, 575.
Additionally, LSA-R.S. 40:1299.131 sets forth the requirements of informed consent by dentists and oral surgeons. According to this statute, the patient must be informed in general terms of the nature and purpose of the dental treatment and the possible associated risks, and must have an opportunity to ask questions regarding the procedure and have the questions answered in a satisfactory manner. See LSA-R.S. 40:1299.131. The patient's subsequent consent to the treatment may be verbal, provided that it meets the established criteria. See LSA-R.S. 40:1299.131(F).
A plaintiff bringing an informed consent negligence claim must prove a causal connection between the physician's failure to inform and the subsequent injury. Hondroulis v. Schuhmacher, 553 So.2d 398, 412 (La.1988). His proof of causation must include two elements: demonstration that his injury resulted from an unrevealed risk that should have been disclosed to him, and that he would *732 not have consented to the operation or treatment if he had known of the risks. Lugenbuhl v. Dowling, 96-1575, p. 12 (La.10/10/97), 701 So.2d 447, 454.
The standard of review for factual determinations is one of manifest error. Thus, for reversal/an appellate court must find that a reasonable factual basis does not exist for the finding and that the finding was clearly wrong. Brandt v. Engle, 00-3416, p. 10 (La.6/29/01), 791 So.2d 614, 621. Whether the plaintiff established by a preponderance of the evidence that the doctor's actions fell below the ordinary standard of care expected of physicians in his medical specialty and whether a causal relationship existed between the alleged breach of that standard and the injury sustained are determinations of fact which should not be reversed on appeal absent manifest error. Thibodeaux v. Jurgelsky, 04-2004, p. 29 (La.3/11/05), 898 So.2d 299, 316.

DISCUSSION
At trial, Mr. Thomas testified that he had a toothache in his upper right jaw and went to see Dr. Anderson to get the tooth extracted. Mr. Thomas stated that no x-rays were taken before the extractions. He testified that immediately after the extractions, he began to suffer excruciating pain that continues to flare up three to four times a week. Thereafter, Mr. Thomas went back to Dr. Anderson who referred him to Dr. William Couvillion, an oral surgeon. According to Mr. Thomas, Dr. Couvillion told him that the extractions caused the pain. Mr. Thomas stated that he would not have had the teeth extracted had he known of the risk of the pain that he currently suffers.
Contrary to Mr. Thomas' testimony, Dr. Anderson testified that he took an x-ray before the teeth were extracted. He stated that Mr. Thomas came in complaining of pain in the right side of his face. An examination revealed that teeth numbers 3 and 4 were infected. The teeth were extracted, and Dr. Anderson prescribed antibiotic and pain medication. He testified that the x-ray was not listed in his medical chart because it was included in the price of the extractions. Dr. Anderson further testified that Mr. Thomas returned to see him on March 19, 2001, complaining of pain. He stated he took another x-ray and noted that Mr. Thomas' sinuses were infected and recommended that he see an ear, nose, and throat doctor. With regard to consent, Dr. Anderson stated that he explained to Mr. Thomas the proposed treatment and that Mr. Thomas consented to the treatment.
Dr. Anthony S. Ioppolo, Mr. Thomas' expert neurosurgeon, explained that he believed that Mr. Thomas was suffering atypical facial pain due to an injury to the superior alveolar nerve, which is the second branch of the fifth cranial nerve out of the brain stem, called the trigeminal nerve. Dr. Ioppolo concluded that the nerve damage became chronic as an atypical facial pain problem. It was his opinion that more probable than not that Mr. Thomas' pain was caused by the extractions, as there was no other reason to explain it. Dr. Ioppolo acknowledged that there were no objective findings on his examination of Mr. Thomas in January of 2003 and that he relied on the history given to him by Mr. Thomas. Dr. Ioppolo was then asked by the trial court whether cranial nerve damage is possible when a tooth is correctly extracted and he responded probably, but that was a question more for an oral surgeon or dentist than for a neurosurgeon.
Dr. William A. Couvillion, an expert in oral surgery, stated that as a dentist and as an oral surgeon, the taking of an x-ray before a tooth extraction is standard practice, but that he did not see any mention of an x-ray in Mr. Thomas' chart. In a case *733 such as Mr. Thomas', the sinuses are nearby and an x-ray would have helped to see the surrounding anatomy. Additionally, Dr. Couvillion did not see any signed consent in the patient's chart, which is also standard practice.
Dr. Couvillion first examined Mr. Thomas on July 20, 2001, and performed exploratory surgery on that date, because the x-rays taken by him showed nothing unusual and there was no answer for Mr. Thomas' pain. When asked if Mr. Thomas' upper right jaw pain was consistent with nerve damage, Dr. Couvillion indicated that it could be, but would defer such a diagnosis to a neurosurgeon. Dr. Couvillion was then asked by the court whether he saw anything during the exploratory surgery that indicated that Dr. Anderson had violated any standard of care. Dr. Couvillion answered negatively, stating that he could not say that Dr. Anderson did anything that would be the cause of Mr. Thomas' jaw pain. He did not see anything that would indicate Dr. Anderson had done something wrong. Further, when asked whether the failure of taking an x-ray would have an effect upon the extraction procedure, Dr. Couvillion did not believe so. In short, Dr. Couvillion could find nothing at all that Dr. Anderson had done incorrectly.
Dr. Karl E. Shanker testified by deposition as an expert in general dentistry.[2] Dr. Shanker stated that he reviewed the charts of Dr. Anderson, Dr. Couvillion, and Earl K. Long Hospital and also reviewed Dr. Ioppolo's report and deposition. It was Dr. Shanker's opinion that there was a breach in the standard of care in failing to take an x-ray prior to the tooth extractions, stating that it was important to know the shape of the root of the teeth and what was surrounding the teeth. He opined that it was more probable than not that the tooth extractions were the cause of the pain. However, he had no opinion whether Dr. Anderson failed to use the proper procedure in extracting the teeth.
In its written reasons for judgment, the trial court determined that Mr. Thomas began to suffer atypical facial pain after he had two teeth removed by Dr. Anderson on March 2, 2001. However, the trial court concluded that Dr. Anderson's treatment of Mr. Thomas did not cause his injury. In making this decision, the trial court specifically relied on the testimony of Dr. Couvillion, whom the court found to be an excellent and knowledgeable witness, that he saw nothing wrong with Dr. Anderson's treatment of Mr. Thomas, that Dr. Anderson's failure to take an x-ray would not cause the injury, and that trauma can occur that no dentist can control. Therefore, the trial court found that Mr. Thomas did not prove by a preponderance of the evidence that Dr. Anderson breached a dentist's standard of care in treating Mr. Thomas.
Based upon our review of the record, we cannot say that the trial court was manifestly erroneous. The trial court determined that Mr. Thomas was unable to establish that any act or failure to act by Dr. Anderson caused injury to Mr. Thomas. The record contains a reasonable factual basis for this factual finding, and the trial court was not clearly wrong.

CONCLUSION
Based on the foregoing, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Mr. Thomas.
AFFIRMED.
NOTES
[1] Mr. Thomas asserted that he filed a complaint under the provisions of LSA-R.S. 40:1299.41, et seq., and was informed by the Commissioner of Administration and the Patient's Compensation Fund (PCF) that Dr. Anderson was not a qualified health care provider under the Medical Malpractice Act. Dr. Anderson admitted in his answer that he is not a member of the PCF.
[2] Dr. Shanker's deposition testimony appears in the record as an exhibit filed in connection with a summary judgment motion; it was introduced over objection at trial.